# EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>SEARS AUTHORIZED HOMETOWN STORES, LLC, *et al.*,[1]<br><br>*Debtors*. | Chapter 7<br><br>Case No. 22-11303<br>(Jointly Administered)<br><br>Hon. Brendan L. Shannon |
| SEARS AUTHORIZED HOMETOWN STORES, LLC, and SEARS HOMETOWN STORES, INC.,<br><br>*Plaintiffs*,<br><br>v.<br><br>TRANSFORM KM LLC, TRANSFORM SR ACCEPTANCE LLC, TRANSFORM SR HOLDINGS LLC, TRANSFORM SR HOLDING MANAGEMENT LLC, and TRANSFORM SR LLC,<br><br>*Defendants.* | Adv. No. 22-50510 (BLS) |
| JEOFFREY L. BURTCH, NOT INDIVIDUALLY BUT AS CHAPTER 7 TRUSTEE FOR THE BANKRUPTCY ESTATES OF SEARS AUTHORIZED HOMETOWN STORES, LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>ESL INVESTMENTS, INC., ESL PARTNERS, L.P., HOMETOWN MIDCO LLC, HOFFMAN TOPCO LLC, TRANSFORM HOLDCO LLC, | Adv. No. 24-50281 (BLS) |

[1] The Debtors in these cases, along with the last four digits of their federal tax identification numbers, are the following: Sears Authorized Hometown Stores, LLC (9641); and Sears Hometown Stores, Inc. (8358). The Debtors' mailing address is 5500 Trillium Blvd. Suite 501, Hoffman Estates, IL 60192.

TRANSFORM MIDCO LLC, TRANSFORM SR ACCEPTANCE LLC, TRANSFORM SR LLC, TRANSFORM SR HOLDINGS LLC, TRANSFORM SR HOLDING MANAGEMENT LLC, TRANSFORM KM LLC, TRANSFORM SR BRANDS MANAGEMENT LLC, TRANSFORM SR BRANDS LLC, TRANSFORM HOLDINGS, INC., EDWARD S. LAMPERT, ELISSA ROBERTSON, HENRY BASRA and MAHAD RAFEEQ,

*Defendants*.

## SETTLEMENT AGREEMENT AND RELEASE

THIS SETTLEMENT AGREEMENT AND RELEASE (the "Agreement") is entered into as of this 18th day of September, 2026 by and among (a) Jeoffrey L. Burtch, not individually but solely in his capacity as the chapter 7 trustee (the "Trustee") for the estates (the "Estates") of Sears Authorized Hometown Stores, LLC ("SAHS") and Sears Hometown Stores, Inc. ("SHS," and together with SAHS, the "Debtors"); (b) PNC Bank, National Association ("PNC"), in its capacity as sole Lender and as Agent for Lender (as such terms are defined in the Credit Agreement) pursuant to the Credit Agreement (as defined herein); (c) ESL Investments, Inc., ESL Partners, L.P., Hometown Midco LLC, Hoffman Topco LLC, Transform Holdco LLC, Transform Midco LLC, Transform SR Acceptance LLC, Transform SR LLC, Transform SR Holdings LLC, Transform SR Holding Management LLC, Transform KM LLC, Transform SR Brands Management LLC, and Transform SR Brands LLC (collectively, the "Transform Defendants"); and (d) Edward S. Lampert, Elissa Robertson, Henry Basra and Mahad Rafeeq (collectively, the "Individual Defendants" and together with the Transform Defendants, the "Defendants"). The Trustee, PNC, the Transform Defendants, and the Individual Defendants shall be referred to herein collectively as the "Parties."

## Background

WHEREAS, on December 12, 2022 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the U.S. Code (the "Bankruptcy Code") in the U.S. Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), thereby commencing the above-captioned bankruptcy cases (the "Bankruptcy Cases"), which are jointly administered under Lead Case No. 22-11303-BLS;

WHEREAS, the Individual Defendants are (or are alleged to be) former officers, directors, managers, and/or control persons of the Debtors;

WHEREAS, the Transform Defendants are entities affiliated with the Debtors through common ownership;

WHEREAS, as of the Petition Date, the Debtors and PNC were parties to that certain Revolving Credit and Security Agreement (as amended, modified and/or supplemented from time to time, the "Credit Agreement," and collectively with all agreements, documents, notes, mortgages, security agreements, pledges, guarantees, subordination agreements, deeds, instruments, indemnities, indemnity letters, fee letters, assignments, charges, amendments, and any other agreements and documents delivered pursuant thereto or in connection therewith, including the "Other Documents" as such term is defined in the Credit Agreement, "Prepetition Loan Documents"), which provided the Debtors with an asset-based revolving loan credit facility (the "Credit Facility");

WHEREAS, as of the Petition Date, PNC and Transform SR Acceptance LLC were parties to that certain Intercreditor and Subordination Agreement dated as of January 26, 2022 (as may be amended, modified, and/or supplemented from time to time, the "Intercreditor Agreement");

WHEREAS, on December 15, 2022, the Bankruptcy Court entered an *Interim Agreed Order (I) Authorizing the Use of Cash Collateral; (II) Granting Adequate Protection; (III) Modifying Automatic Stay; (IV) Scheduling a Final Hearing; and (V) Granting Related Relief* [Bankr. D.I. 47] (the "First Interim Cash Collateral Order");

WHEREAS, on December 20, 2022, the Debtors filed a complaint in the Bankruptcy Court against Transform KM LLC, Transform SR Acceptance LLC, Transform SR Holdings LLC, Transform SR Holding Management LLC and Transform SR LLC, thereby commencing Adv. Pro. No. 22-50510 (the "First Adversary Proceeding");

WHEREAS, on January 23, 2023, Transform KM LLC, Transform SR Acceptance LLC, Transform SR Holdings LLC, Transform SR Holding Management LLC and Transform SR LLC filed *Defendants' Answer to Complaint* [Adv. Pro. No. 22-50510; D.I. 9] in the First Adversary Proceeding;

WHEREAS, on January 17, 2023, the Bankruptcy Court entered its *Second Interim Order (I) Authorizing the Use of Cash Collateral; (II) Granting Adequate Protection; (III) Modifying Automatic Stay; (IV) Scheduling a Final Hearing; and (V) Granting Related Relief* [Bankr. D.I. 154] (the "Second Interim Cash Collateral Order");

WHEREAS, on January 17, 2023, the Bankruptcy Court entered its *Final Agreed Order (I) Authorizing Use of Cash Collateral; (II) Granting Adequate Protection; (III) Modifying Automatic Stay; and (IV) Granting Related Relief* [Bankr. D.I. 155] (together with the First Interim Cash Collateral Order and the Second Interim Cash Collateral Order, the "Cash Collateral Orders");

WHEREAS, on February 22, 2023, the Bankruptcy Court entered orders converting the Bankruptcy Cases to chapter 7 of the Bankruptcy Code, effective as of that date;

WHEREAS, the Trustee was appointed as interim trustee for each of the Estates and continues to serve in that capacity;

WHEREAS, pursuant to section 323 of the Bankruptcy Code, the Trustee is the representative of the Debtors' Estates and, in that capacity, is the proper plaintiff and party in interest in the First Adversary Proceeding;

WHEREAS, on December 11, 2024, the Trustee filed a complaint in the Bankruptcy Court against the Defendants, thereby commencing Adv. Pro. No. 24-50281 (the "Second Adversary Proceeding," and together with the First Adversary Proceeding, the "Adversary Proceedings");

WHEREAS, in the Second Adversary Proceeding, the Trustee and the Defendants have entered into a series of stipulations agreeing, among other things, to extend the deadlines for (i) the Trustee to amend the complaint in the Second Adversary Proceeding and (ii) the Defendants to answer the Trustee's complaint in the Second Adversary Proceeding;

WHEREAS, the Trustee has the power, authority, and standing to, among other things, prosecute, compromise, or otherwise resolve, any and all claims and causes of action belonging to the Estates (or that the Trustee otherwise has standing to assert) against the Defendants, whether by way of claim, counterclaim, cross-claim, lawsuit, adversary proceeding, bankruptcy proceeding or filing, or other proceeding in law, equity, or otherwise, including without limitation all claims asserted or that could have been asserted against one or more of the Defendants in the Adversary Proceedings or the Bankruptcy Case (the "Estate Claims");

WHEREAS, the Parties agreed to engage in voluntary mediation with respect to certain of the Estate Claims and to use the services of Claudia Z. Springer as mediator;

WHEREAS, the Parties participated in such voluntary mediation with respect to such Estate Claims on October 28, 2025 (the "Mediation");

WHEREAS, the Mediation did not result in the resolution of any Estate Claims; and

WHEREAS, as a result of the Parties' post-Mediation discussions, the Parties have agreed to settle and resolve all Estate Claims (whether asserted or unasserted), as well as any claims that were or could have been asserted by PNC against one or more of the Debtors, their Estates, or the Defendants (the "PNC Claims," and together with the Estate Claims, the "Claims"), on the terms and conditions set forth herein.

## Agreement

NOW, THEREFORE, in consideration of the promises and mutual covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereto, intending to be legally bound, agree as follows:

1. Incorporation of Recitals. The Recitals set forth above are incorporated by reference and made a part hereof.

2. Individual Defendants' Settlement Payment. In full and final settlement and satisfaction of all Claims against the Individual Defendants, and in exchange for the releases of the Individual Defendants provided herein, the Individual Defendants shall cause their insurer to pay to the Trustee the amount of Two Million Five Hundred Thousand Dollars

($2,500,000.00) (U.S.) (the "Individual Defendants' Settlement Payment") by electronic funds transfer, to an account to be designated by the Trustee, within thirty (30) days after their receipt of the following materials: (a) written notice that the Effective Date (as defined in Paragraph 11 below) has occurred; (b) a current IRS Form W-9 executed by the relevant payee; and (c) wire instructions for the Trustee's account to be provided by the Trustee at least ten (10) days prior to the Effective Date, identifying a contact information for a person designated by the payee who can verbally confirm the payment details and receipt of funds.

3. Transform Settlement Payment. In full and final settlement and satisfaction of all Claims against the Transform Defendants, and in exchange for the releases of the Transform Defendants provided herein, within thirty (30) days after the later of (a) the Effective Date (as defined in Paragraph 11 below) and (b) the Transform Defendants' receipt of an IRS Form W-9 executed by the relevant payee, the Transform Defendants shall pay to the Trustee the amount of Two Million Two Hundred Fifty Thousand Dollars ($2,250,000.00) (U.S.) by wire transfer to an account to be designated by the Trustee (with contact information for wire confirmation purposes) at least ten (10) days prior to the Effective Date (the "Transform Settlement Payment," and together with the Individual Defendants' Settlement Payment, the "Settlement Payments").

4. Payment to PNC. In full and final settlement and satisfaction of all PNC Claims against the Debtors and the Estates, within five (5) days of the date upon which the Trustee has received both of the Settlement Payments in immediately available funds (the "Settlement Payment Date"), the Trustee shall pay to PNC the amount of Two Million Three Hundred Seventy-Five Thousand Dollars ($2,375,000.00) (U.S.) by check delivered to an address to be designated by PNC at least ten (10) days prior to the Effective Date (the "PNC Settlement Payment").

5. Releases by Trustee.

   a. *Release of Transform Defendants.* Upon receipt of the Transform Settlement Payment, the Trustee, on behalf of himself (but solely in his capacity as Trustee of the Estates), the Debtors, the Estates, and his and their successors and assigns, or any estate fiduciary hereafter appointed (collectively, the "Estate Releasors") hereby releases and forever discharges to the fullest extent permitted by law, each of the Transform Defendants, and their respective predecessors, successors, assigns, present and former affiliates and subsidiaries, and each of their respective directors, officers, employees, agents and managers, from any and all debts, claims, suits, demands, liabilities, damages and consequential damages, actions or causes of action of whatsoever nature and kind, whether known or unknown, suspected or unsuspected, asserted or unasserted, arising at law or in equity, fixed or contingent, liquidated or unliquidated, matured or unmatured, arising from acts, omissions or events that have occurred from the beginning of time through the Effective Date, including without limitation, the Estate Claims, claims arising under Chapter 5 of the Bankruptcy Code, claims for indemnification and contribution, and any claims which have been, may be, or could have been asserted in the Bankruptcy Cases, the Adversary Proceedings or otherwise; provided, however, the Estate Releasors do

not release any claim arising under this Agreement, including any claim for breach of this Agreement.

b. *Release of Individual Defendants.* Upon receipt of the Individual Defendants' Settlement Payment, the Trustee, on behalf of the Estate Releasors, hereby releases and forever discharges to the fullest extent permitted by law (a) the Individual Defendants and their respective heirs, beneficiaries, personal representatives, executors, assigns, agents, and attorneys and (b) all present and former directors, officers, employees, agents and managers of SHS and SAHS and their predecessors, successors, assigns, and present and former affiliates and subsidiaries, and any natural person serving in such a capacity on a de facto or other similar basis, from any and all debts, claims, suits, demands, liabilities, damages and consequential damages, actions or causes of action of whatsoever nature and kind, whether known or unknown, suspected or unsuspected, asserted or unasserted, arising at law or in equity, fixed or contingent, liquidated or unliquidated, matured or unmatured, arising from acts, omissions or events that have occurred from the beginning of time through the Effective Date, including without limitation, those relating to or arising from the Debtors, the Estates, the Bankruptcy Cases, the Adversary Proceedings, the Intercreditor Agreement or the Prepetition Loan Documents, the Estate Claims, claims arising under Chapter 5 of the Bankruptcy Code, claims for indemnification and contribution, and any claims which have been, may be, or could have been asserted in the Bankruptcy Cases, the Adversary Proceedings or otherwise; provided, however, the Estate Releasors do not release any claim arising under this Agreement, including any claim for breach of this Agreement.

c. *Release of PNC.* Upon receipt of the Settlement Payments, the Trustee, on behalf of the Estate Releasors, hereby releases and forever discharges to the fullest extent permitted by law, PNC, and its predecessors, successors, assigns, present and former affiliates and subsidiaries, and each of their respective directors, officers, employees, agents, attorneys, advisors, professionals and managers, from any and all debts, claims, suits, demands, liabilities, damages and consequential damages, actions or causes of action of whatsoever nature and kind, whether known or unknown, suspected or unsuspected, asserted or unasserted, arising at law or in equity, fixed or contingent, liquidated or unliquidated, matured or unmatured, arising from or relating to the Prepetition Loan Documents, the Credit Facility, the Cash Collateral Orders, PNC's claims against the Debtors or the Estates, the Bankruptcy Cases, or the Adversary Proceedings; provided, however, the Estate Releasors do not release any claim arising under this Agreement, including any claim for breach of this Agreement.

6. Releases by PNC.

a. *Release of Transform Defendants*. Upon the Trustee's receipt of the Transform Settlement Payment, PNC and its successors and assigns (collectively, the "PNC Releasors") hereby release and forever discharge to the fullest extent permitted by law, each of the Transform Defendants, and their respective heirs, beneficiaries,

personal representatives, executors and assigns, and their predecessors, successors, assigns, present and former affiliates and subsidiaries, and each of their respective directors, officers, employees, agents and managers from the PNC Claims and any and all debts, claims, suits, demands, liabilities, damages and consequential damages, actions or causes of action of whatsoever nature and kind, whether known or unknown, suspected or unsuspected, asserted or unasserted, arising at law or in equity, fixed or contingent, liquidated or unliquidated, matured or unmatured, arising from or relating to acts, omissions or events that have occurred from the beginning of time through the Effective Date, including without limitation, those relating to or arising from, the Prepetition Loan Documents, the Credit Facility, the Intercreditor Agreement, the Cash Collateral Orders, PNC's claims against the Debtors or the Estates, the Bankruptcy Cases, or the Adversary Proceedings; provided, however, the PNC Releasors do not release any claim arising under this Agreement, including any claim for breach of this Agreement. Notwithstanding the foregoing, the releases by the PNC Releasors in this Paragraph do not apply to any loan, debt or other obligation that any of the Transform Defendants have or owe to any of the PNC Releasors that does not arise from or relate to the PNC Claims, the Prepetition Loan Documents, the Credit Facility, the Intercreditor Agreement, the Cash Collateral Orders, the Debtors, the Estates, the Bankruptcy Proceedings, or the Adversary Proceedings.

b. *Release of Individual Defendants*. Upon the Trustee's receipt of the Individual Defendants' Settlement Payment, the PNC Releasors hereby release and forever discharge to the fullest extent permitted by law (a) the Individual Defendants and their respective heirs, beneficiaries, personal representatives, executors, assigns, agents, and attorneys and (b) all present and former directors, officers, employees, agents and managers of SHS and SAHS and their predecessors, successors, assigns, and present and former affiliates and subsidiaries, or any natural person serving in such a capacity on a de facto or other similar basis, from any and all debts, claims, suits, demands, liabilities, damages and consequential damages, actions or causes of action of whatsoever nature and kind, whether known or unknown, suspected or unsuspected, asserted or unasserted, arising at law or in equity, fixed or contingent, liquidated or unliquidated, matured or unmatured, arising from acts, omissions or events that have occurred from the beginning of time through the Effective Date, including without limitation those relating to or arising from the Debtors, the Estates, the Bankruptcy Cases, the Adversary Proceedings the Intercreditor Agreement, or the Prepetition Loan Documents, the PNC Claims, any claims which have been, may be, or could have been asserted in the Bankruptcy Cases, the Adversary Proceedings, or otherwise, and any claims which have been, may be, or could have been asserted pursuant to the Cash Collateral Orders; provided, however, the PNC Releasors do not release any claim arising under this Agreement, including any claim for breach of this Agreement. Notwithstanding the foregoing, the releases by the PNC Releasors in this Paragraph do not apply to any loan, debt or other obligation that any of the Individual Defendants have or owe to any of the PNC Releasors that does not arise from or relate to the PNC Claims, the Prepetition Loan Documents, the Credit Facility, the Intercreditor Agreement, the Cash

Collateral Orders, the Debtors, the Estates, the Bankruptcy Proceedings, or the Adversary Proceedings.

c. *Release of the Estates*. Upon PNC's receipt of the PNC Settlement Payment, the PNC Releasors hereby release and forever discharge to the fullest extent permitted by law, the Trustee (solely in his capacity as such), the Debtors, and the Estates from the PNC Claims and any and all debts, claims, suits, demands, liabilities, damages and consequential damages, actions or causes of action of whatsoever nature and kind, whether known or unknown, suspected or unsuspected, asserted or unasserted, arising at law or in equity, fixed or contingent, liquidated or unliquidated, matured or unmatured, arising from or relating to the Prepetition Loan Documents, the Credit Facility, the Cash Collateral Orders, PNC's claims against the Debtors or the Estates, the Bankruptcy Cases, or the Adversary Proceedings; <u>provided, however,</u> the PNC Releasors do not release any claim arising under this Agreement, including any claim for breach of this Agreement.

7. <u>Releases by Defendants</u>.

a. *Release by Transform Defendants.* Upon the Trustee's receipt of the Transform Settlement Payment, the Transform Defendants hereby release and forever discharge to the fullest extent permitted by law, each of the Estate Releasors and PNC Releasors from any and all debts, claims, suits, demands, liabilities, damages and consequential damages, actions or causes of action of whatsoever nature and kind, whether known or unknown, suspected or unsuspected, asserted or unasserted, arising at law or in equity, fixed or contingent, liquidated or unliquidated, arising from acts, omissions or events that have occurred from the beginning of time through the Effective Date, relating to the Debtors, the Estates, the Bankruptcy Cases or the Adversary Proceedings, the Intercreditor Agreement; <u>provided, however</u>, the Transform Defendants do not release any claims arising under this Agreement, including any claim for breach of this Agreement. Notwithstanding the foregoing, the releases by the Transform Defendants in this Paragraph do not apply to any loan, debt or other obligation involving the PNC Releasors that does not arise from or relate to the PNC Claims, the Prepetition Loan Documents, the Credit Facility, the Intercreditor Agreement, the Cash Collateral Orders, the Debtors, the Estates, the Bankruptcy Proceedings, or the Adversary Proceedings.

b. *Release by Individual Defendants.* Upon the Trustee's receipt of the Individual Defendants' Settlement Payment, the Individual Defendants hereby release and forever discharge to the fullest extent permitted by law, each of the Estate Releasors and PNC Releasors from any and all debts, claims, suits, demands, liabilities, damages and consequential damages, actions or causes of action of whatsoever nature and kind, whether known or unknown, suspected or unsuspected, asserted or unasserted, arising at law or in equity, fixed or contingent, liquidated or unliquidated, arising from acts, omissions or events that have occurred from the beginning of time through the Effective Date, relating to the Debtors, the Estates, the Bankruptcy Cases or the Adversary Proceedings; <u>provided, however</u>, the

Individual Defendants do not release any claims arising under this Agreement, including any claim for breach of this Agreement. Notwithstanding the foregoing, the releases by the Individual Defendants in this Paragraph do not apply to any loan, debt or other obligation involving the PNC Releasors that does not arise from or relate to the PNC Claims, the Prepetition Loan Documents, the Credit Facility, the Intercreditor Agreement, the Cash Collateral Orders, the Debtors, the Estates, the Bankruptcy Proceedings, or the Adversary Proceedings.

8. Covenant Not to Sue. Each of the Parties agrees that it will not (and will not encourage any other person or entity to) initiate, assert, file, or otherwise maintain any claim, cause of action, or other matter that has been released under this Agreement against any person or entity that is the beneficiary of the release of such claim, cause of action, or other matter under this Agreement.

9. Bankruptcy Court Approval of the Settlement. This Agreement is subject to and conditioned upon approval by the Bankruptcy Court. Within ten (10) business days after execution of this Agreement, the Trustee shall file a motion (the "Motion") and proposed order (the "Proposed Order") seeking approval of this Agreement by the Bankruptcy Court (the "Approval Motion") pursuant to Federal Rules of Bankruptcy Procedure 9019 and 2002. The Motion and Proposed Order shall be in form and content reasonably acceptable to the Defendants, who shall have three (3) business days to review and provide comments to the draft Motion and Proposed Order.

10. Dismissal of Adversary Proceedings. Within ten (10) business days of the Settlement Payment Date, the Trustee shall cause the Adversary Proceedings to be dismissed with prejudice by stipulation or notice, as applicable, against all defendants (including "Transform Holding, Inc.").

11. Effective Date. The "Effective Date" shall be the date that the order entered by the Bankruptcy Court granting the Approval Motion first becomes both final and non-appealable. The Trustee shall provide written notice to the other Parties as soon as practicable upon determining that the Effective Date has occurred.

12. Cooperation with Tax Matters. For one hundred eighty (180) days after the Settlement Payment Date, each of the Transform Defendants (other than ESL Investments, Inc.; ESL Partners, L.P.; Hometown Midco LLC; and Hoffman Topco LLC); agrees to provide reasonable cooperation to the Trustee in connection with the Trustee's preparation of all required tax returns on behalf of the Estates, including, without limitation, by providing readily available information that is necessary for the preparation of the returns. This obligation to provide reasonable cooperation and readily available information (a) shall not require the Transform Defendants to incur any out-of-pocket costs to third-party vendors or to prepare tax filings or documents for the Trustee and (b) does not constitute any assurance that the Transform Defendants have reasonable access to any documents or information that would be of assistance to the Trustee.

13. Termination of the Settlement. If the Bankruptcy Court enters a final order denying approval of this Agreement or if an order approving this Agreement is vacated, reversed,

or otherwise set aside, then this Agreement shall be deemed to be null and void as provided in Paragraph 26 hereof, no Party shall have any obligation to any other Party arising out of this Agreement, no statement made herein may be used by or against any Party or any non-Party for any purpose, and the Parties will be returned to the positions they were in prior to the execution date of this Agreement.

14. Best Efforts and Cooperation. The Parties shall cooperate and exercise their reasonable best efforts to implement the terms of this Agreement, to obtain approval of this Agreement, and to reasonably avoid the occurrence of events that would lead to termination of this Agreement.

15. Governing Law. This Agreement shall be governed by and interpreted in accordance with the provisions of the Bankruptcy Code and, where not inconsistent, the laws of the State of Delaware without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction. Each of the Parties hereby irrevocably consents to the jurisdiction of the Bankruptcy Court with respect to any action to enforce the terms or provisions of this Agreement and expressly waives any right to commence any such action in any other forum so long as the Bankruptcy Court has, and agrees to exercise, jurisdiction.

16. Entire Agreement; Agreement to be Construed as a Whole. This Agreement contains the entire understanding between the Parties as to all matters referred to herein. No other representations, covenants, undertakings, or prior or contemporaneous agreements, whether oral or written, regarding any matters that are not specifically contained in, incorporated into, or acknowledged by this Agreement, shall be deemed to have any effect or binding impact upon the Parties. For the avoidance of doubt, nothing in this Agreement shall modify or otherwise impact the Individual Defendants' rights and obligations under any insurance policy issued by the insurer that has agreed to fund the Individual Defendants' Settlement Payment or under any separate arrangement or agreement with such insurer with respect to the matters referred to in this Agreement. The Trustee and PNC agree that (i) none of the Defendants made any representation or warranties not expressly set forth in this Agreement and (ii) neither the Trustee nor PNC has relied upon any representation or warranty not expressly set forth in this Agreement. This Agreement has been jointly negotiated by the Parties and is agreed to by the Parties. The language of this Agreement shall be construed as a whole according to its fair meaning and in accordance with its purpose and without regard to whom may have drafted any particular provision herein.

17. Counterparts. This Agreement may be executed in any number of counterparts and exchanged via electronic mail or facsimile, all of which taken together shall constitute one and the same instrument, and any of the Parties may execute this Agreement by signing any such counterpart, provided that this Agreement shall not become effective until all Parties have executed the same. The Parties may execute this Agreement electronically and create a complete set of signatures by exchanging PDF copies of the executed signature pages. Electronic signatures transmitted in PDF format shall have the same effect as original signatures.

18. Amendments or Modifications. This Agreement may only be amended or modified by a writing signed by both (i) the Trustee and (ii) all other Parties affected thereby. No waiver of any breach of this Agreement shall be construed as an implied amendment or agreement to amend or modify any provisions of this Agreement. Any notices required or contemplated herein shall also be in writing.

19. Agreement Supported by Consideration; No Duress. The Parties agree, covenant, represent, and warrant that this Agreement is supported by fair consideration and reasonably equivalent value and that this Agreement is being entered into knowingly, voluntarily, at arms' length, without mental reservation, with no purpose of evasion, and with the intent to be legally bound hereby, without coercion of any kind, in part to remove the uncertainty and expenses of additional negotiations and further or possible future litigation and with an adequate opportunity for and the actual benefit of the assistance and advice of legal counsel.

20. No Admission. This Agreement represents the full settlement and compromise of disputed claims. Neither the execution nor the performance of this Agreement shall be construed as an admission of liability on the part of any Party to this Agreement, and all Parties expressly deny any such liability.

21. Nonreliance. Each Party expressly assumes any and all risk that the facts and law may be or become different from the facts and law as known to, or believed to be, by the Parties as of the date of this Agreement, and no Party has relied upon any information supplied by the other or its counsel, or upon any obligation or alleged obligation of the other Party or its counsel to disclose information relevant to this Agreement.

22. Binding Effect; Benefit. This Agreement shall inure to the benefit of and be binding upon the Parties, their respective successors, administrators, trustees, executors, and assigns, and the persons and entities that are releasees hereunder. Except as specifically set forth herein, nothing in this Agreement, express or implied, is intended to confer upon any other person or entity any rights, remedies, obligations, or liabilities.

23. Acknowledgment of Legal Advice. The Parties acknowledge and agree that they enter into this Agreement after consultation with their attorneys, that their attorneys have explained the terms of this Agreement, and that they fully understand and voluntarily accept the terms of this Agreement.

24. Headings. Headings and subheadings are solely for the convenience of the Parties and shall not affect the meaning, interpretation, or construction of any provision of this Agreement.

25. Rule of Construction. The Parties and their respective counsel have reviewed this Agreement and acknowledge and agree that any rule of construction that would require an ambiguity, if any, in this Agreement to be construed against the drafter shall not be employed in the interpretation of this Agreement.

26. Severability.

a. Except as otherwise provided in Paragraph 26(b)-(d), if any term or other provision of this Agreement is determined to be invalid, illegal, or incapable of being enforced by any rule of law, or public policy, all other conditions and provisions of this Agreement shall nevertheless remain in full force and effect so long as the economic or legal substance of this Agreement is not affected in any manner materially adverse to any Party. Upon such determination that any term or other provision is invalid, illegal, or incapable of being enforced, the Parties hereto shall negotiate in good faith to modify this Agreement so as to effect the original intent of the Parties as closely as possible in an acceptable manner to the end that the settlement contemplated hereby is fulfilled.

b. Notwithstanding any other provision of this Agreement, if either or both of the Settlement Payments are not timely received as required by Paragraphs 2 and 3 herein, above, then the Trustee shall provide a written notice of non-payment to counsel for the other parties hereto and the insurer (kgwynne@reedsmith.com; jvishneski@reedsmith.com; ccapp@reedsmith.com; mgurgel@hsgllp.com; lraiford@taftlaw.com; and dshedd@baileycav.com) and the entity or entities that failed to make the Settlement Payment(s) shall have five (5) business days (the "Cure Period") to cure the non-payment. If the non-payment of one or both Settlement Payments has not been cured during the Cure Period, the Trustee shall have five (5) business days to provide written notice to counsel for the Defendants (at the email addresses set forth above) that he is terminating the Agreement (a "Notice of Termination"). Upon issuance of a Notice of Termination: (i) the Trustee shall repay the Transform Settlement Payment or the Individual Defendants' Settlement Payment, as applicable, to the Transform Defendants or the Individual Defendants' insurer, as applicable, within ten (10) business days. If the Trustee timely repays the Transform Settlement Payment or the Individual Defendants' Settlement Payment, as applicable; (i) this Agreement shall be null, void and of no force or effect (other than Paragraph 26(d)), (ii) any and all releases and covenants not to sue granted pursuant to this Agreement, including without limitation those provided at Paragraphs 5, 6 and 7 herein, above, will be revoked; (iii) the Parties shall be restored to the positions they were in prior to the execution of this Agreement; and (iv) the Trustee shall report to the Bankruptcy Court that the settlement was not consummated and request a status conference to consider the entry of a scheduling order and a new date for the filing of the amended complaint.

c. Notwithstanding any other provision of this Agreement, this Agreement (other than Paragraph 26(d)) shall be null, void and of no effect (i) as to the Transform Defendants, the Estate Releasors, and the PNC Releasors if a release provided in Paragraph 5(a) or 6(a) is determined to be invalid, illegal, or incapable of being enforced by any rule of law, or public policy or (ii) as to the Individual Defendants, the Estate Releasors, and the PNC Releasors if a release provided in Paragraph 5(b) or 6(b) is determined to be invalid, illegal, or incapable of being enforced by any rule of law or public policy.

d. Upon this Agreement becoming null and void with respect to the Transform Defendants or the Individual Defendants, as applicable, neither the Trustee nor PNC may assert any Claim that would have been released hereunder against the Transform Defendants or the Individual Defendants, as applicable, without first repaying the Transform Settlement Payment or the Individual Defendants' Settlement Payment, as applicable, to the Transform Defendants or the Individual Defendants' insurer, as applicable.

e. If any amount of the Transform Settlement Payment is avoided and recovered by the Transform Defendants for any reason, the Trustee shall be entitled to (i) assert the Estate Claims against the Transform Defendants solely to recover the avoided amount or (ii) refund the full amount of the Transform Settlement Payment to the Transform Defendants and then assert the Estate Claims against the Transform Defendants.

f. If any amount of the Individual Settlement Payment is avoided and recovered by the insurer for any reason, the Trustee shall be subrogated to the Individual Defendants' rights against their insurer with respect to the avoided amount.

IN WITNESS WHEREOF, the Parties have executed and delivered this Settlement Agreement and Release as of the date first above written.

*[signature pages follow]*

DATED: September 23, 2026

JEOFFREY L. BURTCH, NOT INDIVIDUALLY BUT SOLELY IN HIS CAPACITY AS THE CHAPTER 7 TRUSTEE FOR THE ESTATES OF SEARS AUTHORIZED HOMETOWN STORES, LLC AND SEARS HOMETOWN STORES, INC.

Jeoffrey L. Burtch, Trustee

DATED: September 18, 2026

PNC BANK, NATIONAL ASSOCIATION, IN ITS CAPACITY AS SOLE LENDER AND AS AGENT FOR LENDER PURSUANT TO THE CREDIT AGREEMENT

By: J. Danforth
Its: Senior Vice President

DATED: September 21, 2026

ESL INVESTMENTS, INC.

By: Edward S. Lampert
Its: Chief Executive Officer

DATED: September 21, 2026

ESL PARTNERS, L.P.

By: Edward S. Lampert
Its: Chief Executive Officer

DATED: September 21, 2026

HOMETOWN MIDCO LLC

Raphael Di Napoli
By: Raphael Di Napoli
Its: Vice President

DATED: September 21, 2026

HOFFMAN TOPCO LLC

By: Edward S. Lampert
Its: Chief Executive Officer

DATED: 09/21/2026

TRANSFORM HOLDCO LLC

By: Luke Valentino
Its: General Counsel & Secretary

DATED: 09/21/2026

TRANSFORM MIDCO LLC

By: Luke Valentino
Its: General Counsel & Secretary

DATED: 09/21/2026

TRANSFORM SR ACCEPTANCE LLC

By: Luke Valentino
Its: Secretary

DATED: 09/21/2026

TRANSFORM SR LLC

By: Luke Valentino
Its: Secretary

DATED: 09/21/2026

TRANSFORM SR HOLDINGS LLC

[signature]

By: Luke Valentino

Its: Secretary

DATED: 09/21/2026

TRANSFORM SR HOLDING MANAGEMENT LLC

[signature]

By: Luke Valentino

Its: Secretary

DATED: 09/21/2026

TRANSFORM KM LLC

[signature]

By: Luke Valentino

Its: Secretary

DATED: 09/21/2026

TRANSFORM SR BRANDS MANAGEMENT LLC

[signature]

By: Luke Valentino

Its: Secretary

DATED: 09/21/2026

TRANSFORM SR BRANDS LLC

[signature]

By: Luke Valentino

Its: Secretary

DATED: September 21, 2026

EDWARD S. LAMPERT

Edward S. Lampert

DATED: 9/21/26

ELISSA ROBERTSON

Elissa Robertson

DATED: September 21, 2026

HENRY BASRA

Henry Basra

Henry Basra

DATED: 9/21/26 MAHAD RAFEEQ

______________________________
Mahad Rafeeq